# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLIOTT-LEWIS CORP., | |
| Plaintiff, | |
| v. | 2:13-cv-4943-WY |
| METROPOLITAN REGIONAL COUNCIL OF CARPENTERS, SOUTHEASTERN PENNSYLVANIA, STATE OF DELAWARE, AND EASTERN SHORE OF MARYLAND. | 2:14-cv-247-WY |
| Defendant. | |

## MEMORANDUM

YOHN, J.                                                                                          SEPTEMBER 17, 2014

      The Elliott-Lewis Corporation ("Elliott-Lewis") has brought two actions against the Metropolitan Regional Council of Carpenters, Southeastern Pennsylvania, State of Delaware, and Eastern Shore of Maryland ("MRCC"). The actions arise from decisions by Elliott-Lewis—in its capacity as the official labor broker for the Philadelphia Convention Center ("PCC")—to permit two sets of PCC exhibitors to perform work related to setting up and/or taking down their exhibits. After MRCC filed grievances claiming infringement of its PCC work jurisdiction under applicable labor agreements, the two arbitrators awarded damages to MRCC. Elliott-Lewis then brought the instant suits seeking to vacate the arbitral awards.

      The parties have filed cross-motions for summary judgment in both cases. As their respective briefings for each raise the same arguments about the same issues, I address all four cross-motions in this consolidated memorandum. For the following reasons I will grant Elliott-

1

Lewis's motions for summary judgment, deny MRCC's motions for summary judgment, and vacate the challenged arbitral awards.

## I. Background and Procedural History

### A. Agreements and Parties

At the time of the events at issue, Elliott-Lewis was responsible for hiring, scheduling, and assigning PCC employee-workers for PCC events. PCC employee-workers were represented by six craft unions. One of these unions was MRCC, and MRCC had a collective bargaining agreement ("CBA") with the Philadelphia Exposition Service Contractor's Association ("PESCA Agreement") that was binding on Elliott-Lewis. Additionally, Elliott-Lewis and MRCC were signatories to the Customer Service Agreement ("CSA"), a 2003 compact among various PCC stakeholders. Under the CSA, PCC exhibitors are entitled to install and dismantle their own booths, but only to the extent that (1) the booths are limited to 300 net square feet in size, and (2) their employees perform work using hand tools only, except for power or battery operated tools, hammers, ladders, and saws. Any further work required to install or dismantle exhibits can be performed by MRCC members only. The CSA amends and incorporates by reference the PESCA Agreement.

Under Section K of the CSA, disputes over the conduct of work at PCC are to be immediately decided by a designated PCC representative. Appeals from those decisions are governed by Section K(3), which states:

> [A]n aggrieved party to a collective bargaining agreement shall be entitled to appeal the resolution pursuant to the dispute resolution procedures contained in each party's collective bargaining agreement, <u>except for jurisdictional disputes</u> which shall be resolved in accordance with the Expedited Jurisdictional Dispute Resolution Procedures set forth below (emphasis added).

Both the CSA and the PESCA Agreement provide for submitting disputes to arbitration. Accordingly, arbitrations about "jurisdictional disputes" are subject to the CSA's rules and remedies, while arbitrations about all other disputes involving MRCC are subject to the PESCA Agreement's rules and remedies. The term "jurisdictional dispute" is not defined in the CSA. Section K(4)(g) of the CSA states "the decision of the arbitrator shall be final and binding and shall be treated as the controlling precedent for all future work at the Convention Center." Similarly, Article 14 of the PESCA Agreement states that an "arbitrator thus appointed shall hold hearings as promptly as possible and shall render his award in writing and such award shall be final and binding upon their respective principals or members."

### B. Arbitrations

Since May of 2012, there have been three arbitrations between the parties relating to whether Elliott-Lewis impermissibly allowed exhibitors to perform work that, under the CSA, could only rightfully be performed by MRCC members. Each arbitration raised the issue of whether such a dispute between Elliott-Lewis and MRCC is a "jurisdictional dispute" within the meaning of the CSA, and thus is governed by the CSA or instead the PESCA Agreement.

The first dispute—which is not the subject of either instant lawsuit—arose after Elliott-Lewis permitted exhibitors at PCC's May 2012 medical industry convention to crate and uncrate their medical and pharmaceutical equipment and machinery, and MRCC objected. The PCC representative decided in favor of Elliott-Lewis, MRCC filed a grievance contending infringement on its exclusive work jurisdiction, and the parties proceeded to arbitration before Arbitrator Stanley Aiges.

On February 25, 2013, Aiges issued his decision. Arbitrator Aiges noted that the MRCC contended it was not a jurisdictional dispute and, therefore, not subject to the CSA. Elliott-Lewis

responded that the CSA was designed to deal with disputes over work jurisdiction between unions, but it was also used to resolve disputes over specific work between a union and an exhibitor at the PCC. Elliott-Lewis referred to the Econsult Report which laid the foundation for the adoption of the CSA which referred to "jurisdictional disputes" as occurring "between pairs of unions <u>and</u> between individual unions and customers or exhibitors." Section K(4)(a)'s reference to "affected Labor Unions", Elliott-Lewis argued, does not mean that a jurisdictional dispute exists only when more than one union invokes a claim to work. This limited view would ignore arbitral precedent, two prior decisions, dealing with another union where the dispute was between the union and an exhibitor. In addition, it would ignore the CSA's definition of labor unions as "the Unions, individually and collectively." Elliott-Lewis also pointed to the NLRB's holdings that a jurisdictional dispute need not involve two competing unions.

      The arbitrator concluded that the language was clear, unambiguous and enforceable in that an aggrieved party may appeal a PCC decision over the assignment of work under the grievance procedures in their Collective Bargaining Agreements, except for jurisdictional disputes which are to be resolved under the procedures adopted to deal with such problems set forth in the CSA.

      He noted that the MRCC's position was that a jurisdictional dispute did not exist because there was only one union, the MRCC, laying claim to the work at issue and the dispute was not between two unions. The arbitrator concluded that this argument was too restrictive because the CSA had historically been construed more broadly in that there was arbitrable precedent to consider. In two separate cases involving a dispute between a union and the exhibitors the cases were adjudicated as jurisdictional disputes under the CSA. In fact, the union in those cases did not even seek to limit the application of the CSA. Second, the arbitrator found that nothing in the

record remotely suggested that the parties ever intended to construe CSA as the union requested. Ten years of precedent is "significant." Third, he noted that there was a NLRB precedent which did not treat disputes between two unions claiming jurisdiction over certain work differently from one involving a union and a group of non-represented employees. Finally, he noted that there is the CSA itself to consider as its purpose was to limit disputes, including jurisdictional disputes and that it was specifically designed to deal with the type of problem presented in the case. He concluded that the dispute should be resolved under the CSA's dispute resolution procedures. Assessing whether the arbitration was governed by the CSA or the PESCA Agreement, Aiges ruled that the term "jurisdictional dispute" in the CSA referred to any dispute about the bounds of PCC work jurisdiction between CSA signatories, such as Elliot-Lewis and MRCC, and thus ruled that the arbitration was governed by the CSA.

On the substance of the dispute, Aiges held that Elliott-Lewis erred when it allowed the crating and uncrating work to be performed by exhibitors rather than MRCC members. However, Aiges denied MRCC's request for damages on the basis that the CSA does not authorize non-prospective relief.

On March 29, 2013, MRCC filed a federal complaint in the Eastern District of Pennsylvania seeking to vacate Aiges's order. *See Metro. Reg'l Council of Carpenters v. Elliott-Lewis Corp.*, Civ. A. No. 13-1658 (E.D. Pa.). On August 16, 2013, the Hon. Harvey Bartle III ruled that Aiges's interpretation of "jurisdictional dispute" was consistent with the essence of the CSA, and Judge Bartle upheld Aiges's award on that basis. *See* 2013 WL 4401331 (E.D. Pa. Aug. 16, 2013). Judge Bartle noted that Elliott-Lewis had presented Arbitrator Aiges with two arbitration decisions involving similar facts to support its position that the term "jurisdictional dispute" encompasses the situation presented, finding that those arbitrators "apply the

5

jurisdictional dispute resolution procedure despite the fact that, as here, the dispute was between a union and an employer and concluded that the arbitrator fully considered those precedents." He found that Arbitrator Aiges considered the definition section of the CSA, which defines "Labor Unions" as "the Unions, collectively and individually." He also noted that Arbitrator Aiges considered NLRB precedent applying Section X(k) of the National Labor Relations Act which interprets "jurisdictional disputes" broadly and treated a dispute between a Union and an employer in the same manner as it treats a dispute between two unions. No appeal was filed by MRCC.

The second dispute—presently before the court as Civil Action 13-4943—arises from MRCC's objection to Elliott-Lewis's allowing exhibitors at PCC's September 2012 inflatable device exhibition to roll-out and inflate their large inflatable-balloon products used for children's play. Again the PCC representative decided in favor of Elliott-Lewis, MRCC filed a grievance contending infringement on its exclusive work jurisdiction, and the parties proceeded to arbitration, this time before Arbitrator Anthony Visco, Jr. Arbitrator Aiges's prior award involved the exact same parties, analyzed the exact same contractual provisions, and addressed the exact same issue that was before Arbitrator Visco; namely, that the work assignment issue was a jurisdictional dispute that "should be resolved under the CSA's dispute resolution procedures." On July 24, 2013, Visco issued his decision. Declining to follow Aiges's interpretation of "jurisdictional dispute" in the CSA, Visco stated only the following with reference to that issue:

> In paragraph K(4)(2) (sic) of the CSA, the intent is clear, that a jurisdictional dispute for purposes of the CSA is limited to a dispute between two or more unions signatory to the CSA. I can agree with Arbitrator Aiges insofar as he suggests that it makes sense that the CSA cover a jurisdictional dispute between a union and an exhibitor, nevertheless that concept remains to be included in the CSA. For this reason I decline to follow his decision. A single union signatory to

    the CSA involved with an exhibition is not a jurisdictional dispute under the CSA in its present form.

Ruling that "jurisdictional dispute" does not encompass disputes between one union and Elliott-Lewis, Visco ruled the arbitration was governed by the PESCA Agreement. Finding that Elliott-Lewis erred in not assigning the work in question to MRCC members, Visco awarded MRCC damages to be calculated by the parties. On August 23, 2013, Elliott-Lewis filed suit under the Labor Management Relations Act, 29 U.S.C. § 185, to vacate Visco's award. *See Elliott-Lewis Corp. v. Metro. Reg'l Council of Carpenters*, Civ. A. No. 13-4943 (E.D. Pa.). On March 14, 2014, the parties filed cross-motions for summary judgment.

  The third dispute—presently before the court as Civil Action 14-247—arises from PCC's December 2012 "Winter Wonderland" event, for which Elliott-Lewis permitted party planning staff to tie birch-branch floral arrangements created by the exhibitor as an artistic endeavor, to two large trusses constructed by MRCC members, at the entrance and exit of the exhibit, over objections by MRCC. Again the PCC representative decided in favor of Elliott-Lewis, MRCC filed a grievance contending infringement on its exclusive work jurisdiction, and the parties proceeded to arbitration, this time before Arbitrator Thomas McConnell, Jr. On December 20, 2013, McConnell issued his decision. Adopting Visco's position rather than Aiges's on the meaning of "jurisdictional dispute," McConnell explained:

> I am in agreement with Arbitrator Visco's award. . . . In that award, Arbitrator Visco stated that "[a] single union signatory to the CSA involved in a dispute with an exhibitor is not a jurisdictional dispute under the CSA in its present form." In so holding, Arbitrator Visco expressly disagreed with the result reached by Arbitrator Aiges[.]
>
> In finding that the CSA does apply to disputes between a signatory union and an exhibitor, Arbitrator Aiges referenced other past arbitrations, involving other signatory unions, in which disputes between the unions and exhibitors were handled through the CSA dispute procedure. Arbitrator Aiges also referenced NLRB precedent, which addresses jurisdictional disputes more broadly, including

7

> disputes between a union and a group of non-represented employees. Finally, Arbitrator Aiges states that the CSA was "specifically designed to deal with the type of problem here," and that the CSA was drafted in a broad enough way to include disputes between a union and an exhibitor.
>
> As I have concluded that the language in Section 4(a) of the [CSA] is clear and unambiguous, it is obvious that I respectfully disagree with Arbitrator Aiges' analysis to the contrary. As the parties did not reference NLRB precedent, I find no reason to assess NLRB precedent. As to the issue of the past arbitrations, involving other signatory unions, it is true that, in other cases, the CSA has been used to process disputes between a union and exhibitors. None of the past arbitration awards cited by [Elliott-Lewis], however, presented the question raised here. For reasons of their own, including assessment of their own collective bargaining agreements beyond the [CSA], those unions were content to use the CSA in those cases. This union has taken a different tack, and has the right to have its own arguments considered as to why the [PESCA Agreement] governs here.

On the above reasoning, McConnell ruled the PESCA Agreement governed the arbitration. His analysis contained no discussion of why he believed that Aiges's construction of the CSA was wrong, why he believed that Aiges's reliance on the CSA's incorporation of the Econsult Report and its explicit identification of the issues between a single union and non-union employees as "jurisdictional disputes" was misplaced, or why he believed that Arbitrator Aiges incorrectly applied this CSA definition of the term "Labor Unions" in his interpretation of  § K. McConnell did not state anything suggesting that the parties in this arbitration were different, the issues were different, or the agreements were different.  He failed to analyze any of the provisions of the CSA itself, and merely quoted § K(4)(a). He likewise failed to analyze the prior arbitration awards finding that Union/non-Union work assignments constitute jurisdictional disputes. He said nothing of the "final and binding" language in the agreement in the CSA and its application to all future similar disputes. McConnell then found that Elliott-Lewis's decision as to the tying of branches to the truss infringed on MRCC's work jurisdiction, and, applying the PESCA Agreement, awarded damages to MRCC in the amount of $4,625.51. On January 15, 2014,

Elliott-Lewis filed suit under the Labor Relations Management Act, 29 U.S.C. § 185, to vacate McConnell's award. *See Elliott-Lewis Corp. v. Metro. Reg'l Council of Carpenters*, Civ. A. No. 14-247 (E.D. Pa.). On May 30, 2014, the parties filed cross-motions for summary judgment.

## II.     Legal Standards

### A.     Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation omitted). "In evaluating the motion, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764, 772 (3d Cir. 2013) (internal quotation omitted).

In this case, both the plaintiff and the defendant have submitted motions for summary judgment. "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir. 1968). Accordingly, the legal standard "does not change when the issue is presented in the context of cross-motions for summary judgment." *Appelmans v. City of Phila.,* 826 F.2d 214, 216 (3d Cir. 1987).

### B.     Standard for Review of Arbitration Award

The Third Circuit has explained the standard for vacating an arbitration award as follows:

> The scope of judicial review of an arbitration award is narrowly circumscribed. Because the arbitrator's construction of the collective bargaining agreement is bargained for, a court is not free to vacate an award because it views the merits differently. Nor may a court overrule an arbitration decision because it finds an error of law. The strong federal policy favoring private resolution of labor disputes compels this high degree of deference. An arbitrator's award must be enforced so long as it draws its essence from the collective bargaining agreement.
>
> Despite this limited role in reviewing arbitration awards, some circumstances justify vacating an arbitration award. A labor arbitration decision fails to draw its essence from the collective bargaining agreement if the arbitrator acted in manifest disregard of the law, or if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination.

*United Indus. Workers, Serv., Transp., Prof'l Gov't of N. Am. of Seafarers' Int'l Union of N. Am., Atl., Gulf, Lakes & Inland Waters Dist. AFL-CIO, (Local No. 16) on Behalf of Bouton v. Gov't of Virgin Islands*, 987 F.2d 162, 170 (3d Cir. 1993) (internal citations omitted).

In *Wilbur Chocolate Co., Inc. v. Bakery, Confectionary & Tobacco Workers' Int'l Union, Local 464*, 1988 WL 33881 (E.D. Pa. Mar. 31, 1988), a decision of this court affirmed without opinion by the Third Circuit, *see* 862 F.2d 312 (3d Cir. 1988) the court held that where the governing agreement provides that the arbitrators' decision shall be final and binding, there is such an exemption. When that factor exists, the subsequent arbitrator is bound by the decision of the previous arbitrator because that decision has become "part of the contract." The two arbitrations must share "strict factual identities." Other courts have interpreted this phrase to mean "material factual identity" or "substantial factual identity."

### III. Discussion

According to Elliott-Lewis, Aiges's interpretation of "jurisdictional dispute" in the first arbitration between the parties here had preclusive effect in subsequent arbitrations between the parties raising the construction of that term as an issue, including the Visco and McConnell

10

arbitrations.[1] For support, Elliott-Lewis points chiefly to *Wilbur Chocolate Co.* In *Wilbur Chocolate Co.*, the court held that "[w]here a collective bargaining agreement provides that arbitrators' decisions shall be final and binding, an arbitrator may be bound by a previous arbitration award." *Id.* In the case at bar in *Wilbur Chocolate Co.*:

> [The arbitrator] never discussed [the CBA's] "final and binding" language or explain[ed] why it did not apply to the grievance before him, even though the two decisions involved the same company, the same union, the same issues, and interpretation of the same contract provision.
>
> [The arbitrator] failed to discuss these similarities and why, in light of them, the [first] award was not to be given preclusive effect. Nor did [the arbitrator] state that [the first arbitrator] had acted outside his jurisdiction or give some other reason why the award was fundamentally not binding. In essence, [the arbitrator] gave no reason why the [first] award should not be given preclusive effect other than that he disagreed with it.

*See id.* Because the arbitrator did not address the potential preclusive effect of the first arbitration—despite the "final and binding" language in the CBA and the parallels between the first and second arbitrations—the court found that the arbitrator's decision did not draw its essence from the CBA. *See id.*

MRCC disputes that preclusion applies. It does not, however, challenge *Wilbur Chocolate Co.*'s reasoning or analysis. Rather, MRCC contends that *Wilbur Chocolate Co.* does not compel vacatur because Visco and McConnell explained their disagreement with Aiges's interpretation of "jurisdictional dispute;" because whether a CBA provides for preclusion is itself an arbitral question; and because *Wilbur Chocolate Co.* is allegedly distinguishable.

*Wilbur Chocolate Co.*'s reasoning is persuasive. "A clause stating that a decision of an arbitrator is 'final and binding' is no doubt intended to establish a principle similar to that of res judicata, and to bar reconsideration of the disputes fully on the merits." *Local 616, Int'l Union of*

---

[1] Elliott-Lewis did not argue preclusion in their submissions to Visco or McConnell, but neither does MRCC raise issues of waiver in its submissions here. Accordingly, MRCC has waived any issue of whether Elliott-Lewis waived its issue preclusion arguments, and I consider Elliott-Lewis's preclusion argument on the merits.

*Elec., Radio & Mach. Workers, AFL-CIO v. Byrd Plastics, Inc.*, 428 F.2d 23, 26 (3d Cir. 1970). At a minimum, such language also implicates the possibility of issue preclusion when an "arbitration involves the same company, the same union, essentially the same issue, and interpretation of the same contract." *Trailways Lines, Inc. v. Trailways, Inc. Joint Council*, 807 F.2d 1416, 1425-26 (8th Cir. 1986). *See also id.* ("If an arbitrator does not accord any precedential effect to a prior award in a case like this, or at least explain the reasons for refusing to do so, it is questionable when, if ever, a 'final and binding' determination will evolve from the arbitration process."). Because of this, I agree with *Wilbur Chocolate Co*. that an arbitral decision does not draw its essence from the CBA where (1) an arbitration involves the same company, the same union, the same issue, and interpretation of the same CBA as an earlier arbitration; (2) the CBA states that arbitral judgments are to be "final and binding;" and (3) the arbitrator does not discuss the potential preclusive effect of the "final and binding" language. *See Wilbur Chocolate Co.*, 1988 WL 33881; *United Indus. Workers*, 987 F.2d at 170. And such is the case here: there is no dispute that the Visco and McConnell arbitrations involved the same company, union, issues, and agreements as the Aiges arbitration; the CSA and the PESCA Agreement each state that arbitral decisions are "final and binding." Section K(4)(g) of the CSA goes even further stating that "the decision of the arbitrator shall be final and binding and <u>shall be treated as the controlling precedent</u> for all future work of the Convention Center (emphasis added)." Both Visco and McConnell entirely failed to address why, in light of the similarities between the arbitrations, the "final and binding" language did not require that preclusive effect be given to Aiges's determination of "jurisdictional dispute." They merely stated their conclusion that they disagreed with Aiges's award without further analysis or distinction.

12

As to MRCC's objections, it is inapposite to the above analysis that Visco and McConnell stated they disagreed with Aiges. That is not enough. Meanwhile, there is no conflict with the position that "whether an arbitration award should be given binding effect under the contract is a matter of contractual interpretation for the arbitrator." *See Wilbur Chocolate Co.*, 1988 WL 33881. *See also Teamsters Local 623 v. United Parcel Serv., Inc.*, 786 F. Supp. 509 (E.D. Pa. 1992) (denying request to enjoin pending arbitration on basis of preclusion because whether a CBA provides for preclusion and whether preclusion applies are themselves arbitral questions); *Steris Corp. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., Local No. 832*, 489 F. Supp. 2d 501 (W.D. Pa. 2007) (same). To the contrary, it is because of that precept that an arbitrator "dispenses his own brand of industrial justice" when he fails to address the effect of contractual language plausibly providing for preclusion. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) ("[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."). Finally, MRCC's purported distinction between these cases and *Wilbur Chocolate Co.*—that the arbitrators in *Wilbur Chocolate Co.* arrived at contrary conclusions about a point of fact, whereas the arbitrators here arrived at contrary interpretations of an agreement—is beside the point given that Visco and McConnell did not address the potential preclusive effect of the Aiges decision despite the "final and binding" language in the CSA. *See Wilbur Chocolate Co.*, 1988 WL 33881.[2]

---

[2] MRCC asserts that the matter does not involve a claim between two competing unions, but rather a claim that the bargaining unit work had been improperly assigned to a non-bargaining unit employees, *i.e.*, the exhibitors themselves. MRCC is the only labor union involved in the proceeding. However, the definitions clause of the CSA defines "Labor Unions" as "unions, individually and collectively, who become signatories to this Agreement and their successors and assigns." Elliott-Lewis responds that this definition means that "Labor Unions" can mean one or more unions and that § K(4)(a) should then be read to apply to a jurisdictional dispute by a single affected labor union claiming jurisdiction over the work and the assigning employer.

In short, I find the reasoning of *Wilbur Chocolate Co.* persuasive, and, under that reasoning, Visco's and McConnell's failure to address the potential preclusive effect of the "final and binding" language in the CSA and/or the PESCA Agreement means their decisions did not draw their essences from the applicable agreements. *See id.*; *United Indus. Workers*, 987 F.2d at 170. Accordingly, I will grant Elliott-Lewis's motions for summary judgment, deny MRCC's motions for summary judgment, enter judgment for Elliott-Lewis, and vacate the orders of Visco and McConnell.

Appropriate orders follow.